**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel D. Mavoides, | No. CV-17-04187-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

This is a prisoner civil rights action brought by Samuel Mavoides ("Plaintiff"), who is now represented by counsel. On screening, the Court determined that Plaintiff had stated (1) an Eighth Amendment excessive force claim against Corrections Officers ("CO") Urias and Garza, based on allegations that Urias and Garza both slammed the trap door in Plaintiff's cell on Plaintiff's hand, and (2) a First Amendment retaliation claim against Criminal Investigation Unit Officer Jenkins and COs Torres-Hansen, Troman, and Markowski, based on allegations that, in retaliation for Plaintiff's pursuit of administrative remedies related to the slamming incident, these defendants improperly tightened Plaintiff's handcuffs, kept Plaintiff in the shower for hours, served improper food to Plaintiff and/or failed to feed Plaintiff, woke up Plaintiff with threats, and told Plaintiff that his life would get worse if he did not drop his complaints. (Doc. 16.)[1] Both claims survived summary judgment—Defendants did not move for summary judgment and Plaintiff's

---

[1] The screening order incorrectly identified Defendant Urias as "Defendant Currusso," but Plaintiff clarified in his motion for summary judgment that the two COs who allegedly slammed his hand in the trap were COs Urias and Garza (Doc. 80, 80-1 ¶¶ 4-12) and both of those defendants responded to the motion (Doc. 82).

motion for summary judgment on the excessive force claim was denied (Doc. 87).

Now pending before the Court are five motions *in limine* ("MILs"), which were filed in December 2020.  (Docs. 98-102.)  Although the Court's usual practice is to hear oral argument on MILs during the final pretrial conference, that conference has been postponed indefinitely due to the COVID-19 pandemic and the illness of Plaintiff's counsel.  Accordingly, rather than allow the MILs to remain pending indefinitely, the Court will rule on them now.  If the parties so desire, they may seek reversal or modification of the Court's rulings during the final pretrial conference, once it is rescheduled.

I.      Plaintiff's MIL No. 1

Plaintiff has three prior convictions: (1) a 2009 conviction for armed robbery, for which he received a sentence of 12 years' imprisonment (Doc. 98 at 5-7); (2) a 2009 conviction for kidnapping, for which he received a concurrent sentence of 12 years' imprisonment (*id.*); and (3) a 2020 conviction for arson, for which he received a sentence of 7 years' imprisonment (*id.* at 9-12).  In his first MIL, Plaintiff moves to preclude Defendants from impeaching him via evidence of these convictions.  (Doc. 98.) Specifically, Plaintiff argues his convictions are inadmissible under Rules 401, 403, and 609 because the first two are more than 10 years old, none involved dishonesty, and "all the jury needs to know . . . is that Plaintiff has been convicted of a crime in Arizona with a sentence of more than one year." (*Id.* at 1-2.)

Defendants oppose Plaintiff's motion in part. (Doc. 103.) Defendants do not object to the exclusion of "evidence of [Plaintiff's] prior convictions or the length of his sentence" and simply wish to introduce "evidence concerning the length of time [Plaintiff] has been incarcerated or the date his sentence commenced," because such "information can be used to show the jury that [Plaintiff] has been incarcerated long enough that he knew, or should have known, prison procedures regarding providing food to inmates at his custody level." (*Id.* at 1.)

Plaintiff's motion is granted in part.  To the extent Plaintiff seeks to preclude the admission of any evidence concerning the nature of his prior convictions (including the

length of the sentences imposed pursuant to those convictions), that request is granted. However, Defendants will be allowed to inform the jury of the date on which Plaintiff entered custody. As Defendants correctly note, that information is necessary to establish Plaintiff's familiarity with the prison's food-related procedures, which is a relevant issue in this case. And although the jury will be able to deduce, by doing simple math, the amount of time Plaintiff has been already incarcerated, the jury will not be told why Plaintiff was sentenced to prison (or the length of his sentences). Thus, any prejudice is minimal and is outweighed by the probative value of Plaintiff's date of incarceration.

II.     Plaintiff's MIL No. 2

In his second MIL, Plaintiff seeks to preclude Defendants from raising any defense at trial based on the failure to exhaust administrative remedies. (Doc. 99.) In response, Defendants confirm they will not be raising such a defense. (Doc. 104.)

Because Plaintiff's MIL No. 2 is unopposed, it is granted.

III.    Plaintiff's MIL No. 3

During the summary judgment process, Defendants admitted that certain facts asserted in Plaintiff's separate statement of facts were true. In his third MIL, Plaintiff seeks a pretrial determination that the admitted facts are "deemed admitted" for trial purposes "and do not require further proof." (Doc. 100.) In response, Defendants state they do not oppose Plaintiff's motion. (Doc. 105.)

Because Plaintiff's MIL No. 3 is unopposed, it is granted.

IV.     Plaintiff's MIL No. 4

As background, one of Plaintiff's claims in this action is that Urias and Garza injured his hand by slamming the trap door of his cell onto it. The following day, Plaintiff filed a grievance concerning the incident. (Doc. 101 at 4.) This grievance was rejected. In the report explaining why it was rejected, the prison's grievance coordinator stated: "After further investigation your allegation[s] are unfounded. Documentation was recorded regarding this incident [and] no injuries were reported on the time frames listed." (*Id.* at 6.) Additionally, during the summary judgment process, Urias and Garza submitted

declarations in which they disputed Plaintiff's account of the incident, stating that Plaintiff was the one to push down the plate covering the opening to the trap door and that Plaintiff made threats toward them during the incident. (Docs. 83-1, 83-2.) Nevertheless, Plaintiff was never charged with any disciplinary violations related to the incident.

In his fourth MIL, Plaintiff seeks two jury instructions. (Doc. 101.) First, Plaintiff argues that there was a videotape of the incident, which the prison failed to preserve, and that this preservation failure should result in "an instruction to the jury that the failure to do so is an indication that the video would have supported Plaintiff's version of the events." (*Id.* at 1.) Second, Plaintiff requests a jury instruction "that the failure of Defendants to discipline Plaintiff for the alleged Rule violations is [an] indication that Plaintiff did not do what they alleged he said and did." (*Id.* at 2.)

Defendants oppose Plaintiff's motion. (Doc. 106.) As for the first requested instruction, Defendants argue that (1) Plaintiff "has not established that a video of the event in question ever even existed"; (2) even if a videotape did exist, it is the prison's policy to delete footage taken inside the complex after 14 days unless a preservation request has been made, and Plaintiff "has presented no evidence that he actually requested a copy of the video within the 14-day window"; and (3) Plaintiff never pursued any discovery related to the allegedly missing video during the discovery process. (*Id.* at 1-2.) As for the second requested instruction, Defendants argue Plaintiff's request is "ludicrous" and they "should be allowed to testify as to why they chose not to issue [Plaintiff] a disciplinary ticket, and the jury should be permitted to do their job." (*Id.* at 2-3.)

Plaintiff's motion is denied. First, because the videotape qualifies as electronically stored information ("ESI"), Plaintiff's request for an adverse-inference instruction is governed by Rule 37(e) of the Federal Rules of Civil Procedure. Rule 37(e) was "completely rewritten" in 2015 to "provide[ ] a nationally uniform standard for when courts can give an adverse inference instruction, or impose equally or more severe sanctions, to remedy the loss of ESI." *See* 1 S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 37, at 1070 (2018). A court cannot rely on its inherent authority or

state law when deciding whether sanctions based on the loss of ESI are appropriate—the standards supplied by Rule 37(e) are exclusive. *Id.* at 1073.

A party seeking sanctions under Rule 37(e) has a threshold duty to show that the ESI at issue was, in fact, lost or destroyed. Fed. R. Civ. P. 37, advisory committee note to 2015 amendment ("The new rule applies only . . . when [ESI] is lost."). Here, Plaintiff has not met that burden. There is no evidence that a videotape of the incident ever existed (and Defendants dispute that it existed). Although the grievance coordinator's report refers to "[d]ocumentation" related to the incident that was "recorded" (Doc. 101 at 6), there has been no showing that this documentation was a videotape. The word "documentation" is often used to describe written material, not just video footage, and the final portion of the sentence in the grievance coordinator's report ("no injuries were reported on the time frames listed") can be read as suggesting that the "documentation" being discussed was some sort of written material from the prison infirmary, not video footage.

In any event, because the grievance coordinator's report is so ambiguous, it was incumbent upon Plaintiff to use the discovery process to develop other evidence that the prison possessed, and then destroyed, video footage of the incident. Unfortunately, Plaintiff did not do so and the time to conduct discovery expired long ago. (Doc. 79 [granting final extension of the fact-discovery deadline to January 17, 2020 but warning the parties that "no further deadline extensions will be granted because counsel for the parties decided to waste valuable litigation time after the Court's previous extension of the deadlines"].) The bottom line is that, without evidence that the videotape in question ever existed and was then destroyed, the Court cannot grant an adverse-inference instruction under Rule 37(e).[2]

Second, as for the implications (if any) to be drawn from Defendants' failure to

---

[2] This ruling obviates the need to resolve whether the defendants in this action—COs Urias, Garza, Torres-Hansen, Troman, and Markowski and Criminal Investigation Unit Officer Jenkins, all of whom have been sued in their individual capacities—could be sanctioned under Rule 37(e) even though Rule 37(e) is only triggered when "*a party* failed to take reasonable steps to preserve" ESI and the entity that allegedly destroyed the videotape, the Arizona Department of Corrections, is a non-party. *See generally Pettit v. Smith*, 45 F. Supp. 3d 1099 (D. Ariz. 2014).

pursue disciplinary charges against Plaintiff arising from the incident, this is an issue for the jury's consideration. Plaintiff cites no authority suggesting that a prison official's decision not to pursue disciplinary charges arising from an incident should somehow trigger a legal presumption that the official's account of the incident is false.

V.    Defendants' MIL

Defendants retained Dr. Josh C. Vella to conduct an independent medical examination ("IME") of Plaintiff. (Doc. 102 at 1.) However, due to complications related to the COVID-19 pandemic, the IME never took place. (*Id.* at 1-2.) Defendants then designated Dr. Vella as a consulting expert under Rule 26(d)(4) and asked him to prepare a report based on his review of Plaintiff's medical records. (*Id.* at 2.)

In their sole MIL, Defendants seek an order prohibiting Plaintiff "from asking questions about, referring to, or otherwise mentioning the report prepared by [Dr. Vella] or referring to Dr. Vella himself." (*Id.* at 1.) According to Defendants, a preclusion order is warranted because they will not be calling Dr. Vella as a witness at trial and Rule 26(d)(4) only allows an a party to call an opposing party's consulting expert as a witness at trial under "exceptional circumstances" not present here. (*Id.* at 2-4.)

Plaintiff did not respond to Defendants' motion. Under LRCiv 7.2(i), if a party "does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily." Accordingly, Defendants' MIL is granted.

…
…
…
…
…
…
…
…

Accordingly, **IT IS ORDERED** that:

(1) Plaintiffs' MIL No. 1 (prior convictions) (Doc. 98) is **granted in part and denied in part**.

(2) Plaintiffs' MIL No. 2 (exhaustion) (Doc. 99) is **granted**.

(3) Plaintiffs' MIL No. 3 (admitted facts) (Doc. 100) is **granted**.

(4) Plaintiffs' MIL No. 4 (adverse instructions) (Doc. 101) is **denied**.

(5) Defendants' MIL (Dr. Vella) (Doc. 102) is **granted**.

Dated this 5th day of February, 2021.

Dominic W. Lanza
United States District Judge